# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DAVID M. HANEY,
:
        Plaintiff,                        Case No. 3:98-cv-586

:

      -vs-                              Chief Magistrate Judge Michael R. Merz

GENERAL MOTORS CORPORATION,
 et al.,
:
        Defendant.

---

**DECISION AND ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT**

---

This case is before the Court on Plaintiff's Motion to Vacate Judgment Entry Pursuant to Fed. R. Civ. P. 60(b)(6)(Doc. No. 82).

Final judgment was entered in this case, dismissing the Complaint with prejudice, on December 14, 2000 (Doc. No. 71). The Judgment was affirmed on appeal by the Sixth Circuit on October 4, 2002. The instant Motion followed on June 10, 2005.

The gravamen of the Motion is that Plaintiff has discovered new evidence that he returned to work at GM on December 23, 1994, to wit, evidence that GM paid him during 1995 which is shown by receipt of a W-2 form by the Social Security Administration which reports such pay.

Fed. R. Civ. P. 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the

1

>judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. §1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills or review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

Thus Rule 60(b)(2) expressly provides for relief from judgment upon the presentation of newly-discovered evidence "which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." However, a Rule 60(b)(2) motion is required to be made within one year of judgment, or, in this case, not later than December 14, 2001.

Plaintiff, however, relies not on Rule 60(b)(2), but on 60(b)(6) which does not have a firm limitation period. There are two reasons why Plaintiff is not entitled to relief under Rule 60(b)(6). First of all, this provision and other provisions of Rule 60(b) are mutually exclusive; that is, if the reason offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1) -(5), then relief cannot be granted under Rule 60(b)(6). *Abdur'Rahman v. Bell (In re Abdur'Rahman)*, 392 F.3d 174, 183 (6th Cir., 2004)(en banc), citing *Liljeberg v. Health Svcs. Acquisition Corp.*, 486 U.S. 847, 863 & n.11, 100 L. Ed. 2d 855, 108 S. Ct. 2194 (1988).

Secondly, Plaintiff has not been diligent in presenting this Motion to the Court. Although there is no one-year time limit on motions under Fed. R. Civ. P. 60(b)(6), they must be presented within a reasonable time, which will vary with the facts of each individual case. Wright, Miller &

2

Kane, Federal Practice and Procedure: Civil 2d §2866.  Courts regularly consider whether the party had some good reason for his failure to take appropriate action sooner.  *Id*.

Plaintiff claims that he received an earnings statement from the Social Security Administration sometime after the judgment was affirmed which showed he received income from General Motors in 1995 (Haney Affidavit, Doc. No. 82-2, at ¶10).  The date of the Court of Appeals judgment is October 4, 2002, so Plaintiff is claiming to have received the relevant earnings statement after that date.  He claims that thereafter he advised his attorney of the earnings statement and his attorney wrote to General Motors' counsel, requesting verification of the source of the income (Id. at ¶13); no copy of the letter has been furnished to the Court.  He claims his attorney then sent a letter directly to General Motors seeking verification (Id. at ¶15); Exhibit A attached to Plaintiff's Affidavit shows that letter was written January 20, 2003.  General Motors' undated response advises that the Wage and Employment Verification Center has records only for dates after 1999 and that W-2's can be obtained from the payroll office.  The Affidavit implies that the next thing that happened was a another request by counsel, followed by a trip to the Social Security Office by Plaintiff.  However, the earnings statement obtained from Social Security is dated March 18, 2003, whereas counsel did not write until December 16, 2003 (compare dates on counsel's letter, Exhibit C, and the attached earnings statement).  Exhibit D, dated February 17, 2003, before Plaintiff's trip to Social Security, shows GM's Payroll Office responded that according to their records, Plaintiff received no wages for calendar year 1995.  Eventually, Plaintiff learned that Social Security did not have any W-2's and on March 14, 2004, he claims he asked the Internal Revenue Service "for a copy of my tax record for calendar year 1995" (Affidavit, ¶24).  No copy of the request to IRS has been furnished to the Court, but Exhibit G is the July 6, 2004, IRS response which states "We are sending the limited tax account information for tax year Dec. 31, 1995."  What is attached is not a W-2 in form, but includes W-2-like information: Wages-tips-other compensation of $391.89 and withheld

3

federal income tax, FICA tax, and Medicare tax. It was more than eleven months later when the instant Motion was filed on June 10, 2005.

This set of facts does not show due diligence on Plaintiff's part. In 1999 the Social Security Administration, as required by law, began sending yearly earnings statements to workers over the age of 25 about three months before their birthday. (See www.ssa.gov, consulted June 13, 2005). The Court has not been advised when Plaintiff's birthday occurs or when he received the earnings statement which triggered his concern, but it must have been sometime between the date the Court of Appeals decided the case (10/8/2002) and the date he received a confirming earnings statement over the counter at the Social Security Office (3/18/2003). However, Plaintiff should also have received earnings statement from Social Security during that same time period in 1999, 2000, and 2001. He has not explained why he did not act when he saw the earlier statements which would have conveyed the same information.

Furthermore, Plaintiff insists the earnings statement proves that GM issued him a W-2 in 1995. He has offered no explanation why his own tax records do not contain a copy. Has he disposed of them? When did he do so? If GM issued the W-2, he would have known about it not later than January 31, 1996, the last date an employer is permitted to issue W-2's for a preceding year. But if he knew about the W-2 in 1996, he should certainly have still known about it when he filed this lawsuit nearly three years later on December 24, 1998. Certainly since the time the lawsuit was filed, Plaintiff has known of the importance of proving that he was employed at GM on the relevant dates in late 1994. All of the things he has done to obtain additional evidence (e.g., getting earnings statements from the Social Security Administration or W-2's from the IRS) are things which could have been done before the summary judgment motions became ripe in this case.

In sum, Plaintiff has known since at least March 18, 2003, that GM reported to Social Security paying him wages or similar compensation in 1995 and he had the motive and means

available to learn this fact much earlier.  The Motion was not brought within a reasonable time, even assuming the first notice was March 18, 2003.

Moreover, the information presented on the Motion, even if timely presented, would not warrant vacating the judgment.  The Motion is argued as if the critical fact in the Court's original judgment were whether the Plaintiff reported to work on December 23, 1994.  Plaintiff apparently has concluded the Court did not believe his testimony about what happened that afternoon and states "The Magistrate's decision turned on credibility issues." (Motion, Doc. No. 82-1, at 6.)

A cursory examination of the Decision and Order which granted both Defendants' Motions for Summary Judgment (Doc. No. 70) belies that argument.  Plaintiff's testimony about his return to work on December 23, 2004, was completely accepted as it was required to be under Fed. R. Civ. P. 56.  See Decision and Order, Doc. No. 70, at 6-7.

What the Court did conclude was that it was unreasonable for Plaintiff to wait as long as he did (from January, 1995, to June, 1998) to conclude that the Union was not fairly representing him. See Decision and Order, Doc. No. 70, at 16-17.  As recited in the Decision and Order, it was Plaintiff's burden to prove that the six-month statute of limitations on §301 actions was equitably tolled until June 25, 1998, six months before he filed suit.  That question in no way turned on Mr. Haney's credibility – all of the historical facts were accepted as he had testified to them.  What the Court concluded was that on those facts, Mr. Haney waited an unreasonably long time to conclude that the Union was not fairly representing him.  In no way does Fed. R. Civ. P. 56 require a court to accept, under the guise of not making credibility determinations, a litigant's own conclusion that his behavior was reasonable.  Finally, if the Court's Decision did reflect an improper credibility determination, that issue was fully available on appeal; the later discovery that GM paid Plaintiff

wages in 1995[1] would not affect that determination.

The Motion to Vacate Judgment Entry is DENIED.

June 13, 2005.

s/ **Michael R. Merz**<br>Chief United States Magistrate Judge

---

[1] Concluding that that is what the evidence filed in support of the instant Motion proves is again construing the evidence most favorably to the Plaintiff.  The Court in fact does not know what the payment was for.